JUSTICE RICE,
dissenting.
¶62 The Court’s decision may well come as a surprise to both Russell and the State. Throughout this case, the parties have litigated the issue raised — whether the double jeopardy clause of the Montana Constitution barred conviction and sentencing for both felony murder and the underlying felony. However, the Court lays aside the subject matter of this litigation and decides the case based upon a premise which has never been mentioned during the course of this case. There was no reference whatsoever of § 46-11-401, MCA, in the District Court or in the appellate briefs filed with this Court, and neither party discussed it during the oral argument we conducted on the University of Montana campus. However, upon retreat to the ivory tower, the Court has recast the case. The many people who have observed our proceedings and watched this case can now say, “Oh, that’s how it works!”
¶63 The Court offers the justification that we “avoid constitutional issues whenever possible.” However, this principle of judicial self-restraint does not permit us to avoid constitutional issues by deciding cases on issues not raised. We are not to forage about for issues not argued in order to avert consideration of a constitutional claim the parties have validly raised within the proceeding. Thus, it is not “possible” to avoid the constitutional issue raised in this case. The Court rejects consideration of an issue addressed by Justice Nelson’s Concurrence and Dissent because “that issue was not raised or briefed in this appeal.” The old expression about the pot calling the kettle black comes to mind.
¶64 The Court’s approach is fundamentally unfair to any litigant, here the State, who has defended a case upon the issues raised, prevailed in the District Court, then argued the case again on appeal upon the issues raised, only to lose the case on an issue neither party has ever mentioned during the course of the litigation-and on which it had no opportunity to brief, argue, or defend.
¶65 Before turning to the issue raised, briefed, and argued, I am *317 compelled to briefly point out the errors in the Court’s analysis. Perhaps as a consequence of addressing an issue which has not been researched and briefed by the parties, the Court, in my opinion, misapplies the statutes and overturns important precedent. The Court attempts to jam § 45-5-102, MCA, the felony murder statute, into § 46-1-202(9), MCA, the general definition of lesser included offense, in order to conclude that Russell cannot be convicted for both knifing Wallin and killing Gewanski under § 46-11-410, MCA, because these crimes are necessarily included within the other. It is clear that the Legislature did not intend such a result-indeed, we have so held. These crimes met the criteria for fulfillment of the special purposes of the felony murder statute without losing their distinctness as separate crimes.
¶66 Section 45-5-102(1), MCA, provides as follows:
A person commits the offense of deliberate homicide if: (a) the person purposely or knowingly causes the death of another human being; or (b) the person attempts to commit, commits, or is legally accountable for the attempt or commission of robbery, sexual intercourse without consent, arson, burglary, kidnapping, aggravated kidnapping, felonious escape, assault with a weapon, aggravated assault, or any other forcible felony and in the course of the forcible felony or flight thereafter, the person or any person legally accountable for the crime causes the death of another human being.
(Emphasis added.) Both subparagraphs make it a crime to deliberately cause the death of another person. The only difference between deliberate homicide under (a) and homicide by felony murder rule under (b) is the proof of mental state. As we discussed in Close, we have long recognized, from the days when criminal liability was predominantly governed by the common law, the principle of felony murder whereby malice, required by first degree murder, is “implied” from commission of the underlying felony. 191 Mont. at 248, 623 P.2d at 950. We noted in Close that this “history of the common law and the purpose behind laws are both important tools to be used to determine legislative intent.” 191 Mont. at 247, 623 P.2d at 950. We thus traced the history and purpose of felony murder statutes and gave the reason why felony murder involves two distinct crimes:
Given this rationale for the felony murder doctrine, it strains credulity to hold that the underlying felony merges into the felony murder. The statute proscribing the underlying felony-robbery, for example-is designed to protect a wholly different societal *318 interest from the felony murder statute, which is intended to protect against homicide. The underlying felony is an essential element of felony murder only because without it the homicide might be second degree murder or manslaughter. Clearly, neither manslaughter nor second degree murder merges with any other felony like robbery or assisting a prisoner to escape.
Close, 191 Mont. at 248, 623 P.2d at 950 (citing U.S. v. Greene, 489 F.2d 1145, 1168-69, (D.C. Cir. 1973)). We concluded that “[cjlearly, the legislature properly allowed and broadened the law relating to cumulative sentencing in felony murder cases.” Close, 191 Mont. at 249, 623 P.2d at 950-51 (emphasis added). We held that the felony murder statute thus contemplates multiple sentences, one for the murder and one for the underlying felony. Then in Burkhart, we used the same legislative intent analysis and reaffirmed our holding in Close, that the predicate offense and the felony murder do not merge, even though the offenses at issue in Burkhart involved the same victim and one charge.
¶67 However, in a stupefying leap unsupported by any authority, and without so much as a thought about whether the statutes might be deemed to conflict and thus require reconciliation, the Court concludes that the Legislature has somehow eliminated multiple punishments in felony murder cases-despite the careful explanation to the contrary in Close and despite hundreds of years of common law to the contrary-by virtue of the enactment of the statutes generally addressing lesser included offenses and multiple prosecutions. I cannot agree. Without saying so, the Court repudiates our holding in Close that the “statute proscribing the underlying felony ... is designed to protect a wholly different societal interest from the felony murder statute, which is intended to protect against homicide,” and that a merger of the two offenses would ignore the Legislature’s manifest intention to serve these two different interests. Close, 191 Mont. at 248, 623 P.2d at 950-51 (citing Greene, 489 F.2d at 1168-69).
¶68 In my view, and as we have held, the felony murder rule is a specific statute applying to the homicide case involving a predicate felony, and fulfills special societal interests. This legislative intent has not been rejected by the enactment of §§ 46-1-202(9) and 46-11-410, MCA. The Court’s decision not only rejects legislative intent and our precedent, it defies any common sense-that Russell could stab one victim and kill another but be limited to only one sentence. I could not be more confident that the Legislature did not intend this result.
¶69 In response to this dissent, the Court fesses up. It admits that we *319 held to the contrary in Close, but then takes drastic action-overruling Cióse — necessary to support its holding here, concluding that “[t]he basic premise of the Close rationale is false.” Thus, the Court removes the “stupefying leap” from its opinion by overruling precedent to fill the gap. What remains stupefying is that the Court would overrule longstanding precedent without the issue being raised, briefed, or argued.
¶70 Reasoning that because “a defendant cannot commit the offense of felony homicide without committing a predicate felony offense,” the Court holds, obliquely, that the predicate offense must always merge with the homicide and under no circumstances can a defendant be punished for both crimes. It blames the prosecutor for this predicament, and suggests that Russell should have been charged with aggravated assault as a stand-alone charge, and robbery should have been used as the predicate offense. Of course, under the Court’s approach, Russell could never be punished for the robbery, but more to the point, the prosecution should not be faced with this choice.
¶71 We have explained all of this before, which the Court simply ignores. “The test for determining what constitutes the same offense differs depending on whether the case involves multiple prosecutions or multiple punishments imposed at a single prosecution ... Two statutory crimes that constitute ‘the same offense’ for purposes of multiple prosecutions do not necessarily constitute ‘the same offense’ for purposes of multiple punishments.” Close, 191 Mont. at 245, 623 P.2d at 949 (emphasis added).
¶72 Close was charged with deliberate homicide, aggravated kidnapping, and robbery in a single prosecution. “The issue, then, is not one of multiple prosecutions but of multiple punishments. The issue is whether, under Montana’s statutory scheme, a defendant may be punished for both felony homicide and the underlying felony.” Close, 191 Mont. at 245-46, 623 P.2d at 949. In determining that multiple punishments were indeed permissible, the Court determined that felony murder was a unique creation-it operated uniquely to avoid merger, serving “a wholly different societal interest.” Today, the Court simply discards the unique interest served by the felony murder rule in favor of theoretical consistency: it demands that felony murder be subjected to general merger rules, necessarily holding that felony murder is no longer a unique mechanism under our law with regard to multiple punishments. The Court offers no explanation for why the unique societal purposes, which we have explained are served by the felony murder statute, must be discarded in favor of generally *320 applicable merger provisions. It offers nothing which would indicate that such general provisions were intended to obstruct the operation of the felony murder statute, which is grounded in hundreds of years of common law. The loser is justice: “If a defendant wants to commit a felony, he must pay a price. If a defendant wants to commit murder in addition to the felony or in the course of committing another felony, he must pay a higher price.” Close, 191 Mont. at 249, 623 P.2d at 950.
¶73 Turning likewise briefly to the issue actually raised, the constitutional prohibition on double jeopardy, Russell argues that we, without saying so, overruled Close and rejected consideration of legislative intent, and likewise endorsed expansive double jeopardy principles which require reversal, in State v. Guillaume, 1999 MT 29, 293 Mont. 224, 975 P.2d 312. However, this argument ignores that Close addressed the precise double jeopardy question before us here-whether a defendant can be convicted and punished for both felony murder and the underlying felony-while the concern addressed by the deeply divided Court in Guillaume was a sentencing enhancement statute. We should be careful about quickly discarding Close.
¶74 While I would agree that legislative intent does not constrain the protections of the Constitution, that does not mean that legislative intent is completely irrelevant when applying constitutional protections. Rather, we should look at the purposes the Legislature intended and then determine whether those purposes are permissible under and consistent with constitutional protections. This was the approach we took in Burkhart, decided after Guillaume, and is the appropriate approach here. See Burkhart, ¶¶ 42-45. In Burkhart, we considered whether due process was violated by the felony murder statute when the underlying felony is integral to the homicide, and concluded that it was not. Burkhart, ¶ 38. We further concluded, on the basis of legislative intent, that the felony murder rule did not violate due process by relieving the State from proving intent to kill in that case. Burkhart, ¶ 45.
¶75 It is important to note that, unlike the charges here, Burkhart was not charged separately with the underlying felony of aggravated assault, and we did not consider whether separate charging or separate punishment was permissible pursuant to the double jeopardy clause. Additionally, Burkhart was charged with felony murder on the basis of assault and homicide of the same victim. We did not consider in Burkhart the factual premise presented today where the victim of the predicate felony is different than the victim of the felony murder.
*321 ¶76 That is a critical point. Irrespective of whether we consider legislative intent and the unique nature of the felony murder statute, to hold that the State violated Russell’s right against double jeopardy would produce a result disconnected from the facts of this case. Simply put, Russell committed two crimes-he killed Gewanski and assaulted Wallin with a weapon. Russell was then charged with and convicted of two crimes-felony murder of Gewanski and aggravated assault of Wallin. If we accept Russell’s argument that Russell cannot be punished for both, the outcome is clear: Russell would receive a free pass for assault with a knife upon Wallin. “Double jeopardy exemplifies the legal and moral concept that no person should suffer twice for a single act.” Guillaume, ¶ 17. However, Russell committed two acts and would suffer only once. Such a result is antithetical to the legal and moral concepts behind double jeopardy.
¶77 Other jurisdictions have noted this precise distinction-multiple victims. The Supreme Court of Georgia distinguished between felony murder involving a single victim and felony murder involving multiple victims in Walker v. State, 327 S.E.2d 475, 479 (Ga. 1985). Where “the underlying felony charged in one count of the indictment is committed upon one victim and the ... felony murder charged in another count of the indictment is committed upon another person ... the underlying felony does not merge with the felony murder conviction.” Satterfield v. State, 285 S.E.2d 3, 5 (Ga. 1981). The State of Washington has concluded that where the predicate offense is perpetrated against one victim and the felony murder against another, the predicate felony does not merge with the felony murder and punishment for both does not violate double jeopardy-even where the predicate offense, as here, is aggravated assault. State v. McJimpson, 901 P.2d 354, 356-57 (Wash. App. 1995). This is because offenses involving different victims but arising from the same act or transaction are not the same in law and fact. McJimpson, 901 P.2d at 356. Dual victims demand dual punishments and such punishments do not violate double jeopardy.
¶78 On this clear authority, I would affirm.
CHIEF JUSTICE GRAY joins the dissent of JUSTICE RICE.